UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CODY MILLER WILLIAMS,<br><br>Defendant. | Case No. 1:19-cr-00181-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendant Cody Miller Williams's motion to suppress evidence (Dkt. 31). The Court held an evidentiary hearing on September 29, 2020, and the parties submitted supplemental briefing afterward. For the reasons explained below, the Court will deny the motion.

## BACKGROUND

On February 22, 2019, Idaho Falls Police officers were dispatched to a residence for a report of a possible burglary in progress by a man wearing a dark trench coat and carrying a crowbar. When officers responded to the residence, they found a man—later identified as Williams—behind the caller's house wearing a

dark trench coat and carrying a crowbar. As they walked toward Williams, officers directed him to drop the crowbar and "come and talk to us." Williams did not respond. Officers repeated the order a second time without a response. After officers repeated the command a third time, Williams dropped the crowbar but remained standing next to it.

Officers continued to approach Williams and directed him a fourth time to "come here and talk to us." Williams did not move and responded by telling the officers to "stay back." Officer Hummer replied "no" and continued to approach. Williams began backing away from the officers and said "no" just before the officers reached him.

Upon reaching Williams, Officer Hummer directed Williams to get on the ground. Officer Hummer then reached for Williams's left arm and Williams pulled away, still backing up. At that time, both Officer Hummer and Officer Murdock took hold of Williams's arms. Williams continued to struggle as officers took him to the ground and put him face down on his stomach. Williams pulled his hands under his chest and refused to put his hands behind his back. Officers eventually gained control of both arms and placed him in handcuffs. Officer Murdock then searched Williams and located a gun in his coat pocket, which is the basis for the charge in this case.

Williams now seeks to exclude the gun, arguing that the officers exceeded the scope of a *Terry* stop or frisk and did not have probable cause when they searched his pockets.

## LEGAL STANDARD

The Fourth Amendment provides that "the right of the people to be secure in their persons . . . shall not be violated." U.S. Const. amend. IV. This is not "a guarantee against *all* searches and seizures, but only against *unreasonable* searches and seizures." *United States v. Sharpe*, 470 U.S. 675, 682 (1985). A reasonable search must be based on probable cause, unless one of the exceptions to the warrant requirement applies. *United States v. Katz*, 389 U.S. 347, 357 (1967). The burden is on the Government to show that an exception to the warrant requirement applies. *United States v. Carbajal*, 956 F.2d 924, 930 (9th Cir. 1992).

## ANALYSIS

### A.  The Terry Stop

The record before the Court and the evidence presented at the hearing indicate that officers acted within the scope of *Terry* when they directed Williams to drop the crowbar and come speak to them. An officer may "conduct a brief, investigatory stop when the officer has reasonable, articulable suspicion that criminal activity is afoot." *United States v. Brown*, 925 F.3d 1150, 1153 (9th Cir. 2019). If the initial stop is justified by suspicion, officers may take reasonable

measures to neutralize a risk of harm in order to pursue their investigation without fear of violence. *See Terry v. Ohio*, 392 U.S. 1, 24 (1968); *see also Adams v. Williams*, 407 U.S. 143, 146 (1972). When an officer has reasonable suspicion that the detained person "may be armed and presently dangerous" the officer may perform a limited search for weapons in the form of a pat down. *United States v. Ormann*, 486 F.3d 1170, 1173 (9th Cir. 2007) (quoting *Terry*, 392 U.S. at 30). The question the court must ask is "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27.

Here, neither party disputes that officers were justified in performing a brief, investigatory stop under the circumstances. Therefore, the Court will turn to whether officers had a reasonable suspicion that Williams posed a danger to themselves or others, and if the measures they took to neutralize that risk were reasonable.

When officers first contacted Williams, they were investigating the report of a possible burglary in progress and Williams, matching the description of the suspect, was in possession of a crowbar.  A crowbar is not only an item that could be used in committing a burglary, it could also be used as a weapon.  Further, Williams was wearing a trench coat which made it difficult to see if he had any

**MEMORANDUM DECISION AND ORDER - 4**

other dangerous weapons on his person. The Court finds that a reasonably prudent officer would therefore believe that Williams posed a danger to the officer's safety. Thus, the direction to drop the crowbar and come speak to officers was a reasonable means of neutralizing the risk so the officers could pursue their investigation without fear of harm. *See United States v. Thompson*, 2005 WL 3050634, at *10 (E.D. Mo. 2005). For these same reasons, it would have been proper for officers to perform a pat down search of Williams to ensure he had no other weapons on his person. *See id.*

### B.     Probable Cause to Arrest

The next issue is whether officers had probable cause to arrest Williams for resisting and obstructing a public officer when he failed to comply with their orders. For an arrest to be lawful, it must be based on probable cause. *Virginia v. Moore*, 553 U.S. 164, 176–77 (2008) Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed. *Henry v. United States*, 361 U.S. 98, 102 (1959). Under Idaho law, an officer may make a warrantless arrest when a person has committed a crime in an officer's presence. *State v. Bishop*, 146 Idaho 804, 816 (Idaho 2009) (citing *Moore*, 553 U.S. at 176–77 (2008)); *see also* I.C. § 19-603(1). Because Officer Murdock testified that Williams was placed under arrest for

resisting or obstructing a public officer, the officers must have had probable cause to believe that Williams violated Idaho Code section 18-705 for the arrest to be considered lawful.

Idaho Code section 18-705, makes it a crime to "willfully resist[], delay[] or obstruct[] any public officer, in the discharge, or attempt to discharge, of any duty of his office." Three elements must be satisfied in order to find a violation of the statute: "(1) the person who was resisted, delayed or obstructed was a law enforcement officer; (2) the defendant knew the person was an officer; and (3) the defendant also knew at the time of the resistance that the person was attempting to perform some official act or duty." Here, there is no dispute that Officer Hummer and Officer Murdock were law enforcement officers and that Williams was aware of this fact. Therefore, the Court will focus on whether Williams knew that the officers were attempting to perform an official act or duty.

"[A] defendant's subjective belief that the officer's act is lawful is not an element of resisting and obstructing officers . . . . what is required is that the officer was, in fact, lawfully attempting to perform some official act or duty and that the defendant knew that the officer was attempting *that act*." *See State v. Orr*, 157 Idaho 206, 212 (Idaho Ct. App. 2014). An officer carrying out "lawful and authorized acts of a public officer" is performing a duty under section 18-705.

MEMORANDUM DECISION AND ORDER - 6

*State v. Bishop*, 146 Idaho 804, 817 (Idaho 2008).

As explained above, Officer Hummer and Officer Murdock were justified in directing Williams to drop the crowbar and come speak to them under *Terry*. Because the officers were performing a lawful and authorized act and Williams was aware that they were attempting that act, the officers had probable cause to believe that Williams's failure to comply with their orders to drop the crowbar was a violation of § 18-705. This was a misdemeanor crime committed in the presence of the officers. Therefore, it was lawful for officers to make a warrantless arrest of Williams after he failed to comply with their orders.

C.   **Search Incident to Arrest**

The subsequent search of Williams was a valid search incident to arrest. A search conducted incident to a lawful arrest is an exception to the warrant requirement. *Henry v. United States*, 361 U.S. 98, 102 (1959). Officers may perform searches incident to a lawful arrest to ensure their safety and safeguard evidence. *United States v. Robinson*, 414 U.S. 218, 226 (1973). The evidence obtained during a search incident to a lawful arrest is generally admissible. *Miller v. United States*, 375 U.S. 301, 314 (1958).

Officer Murdock testified that he emptied Williams's pockets as part of a search following the arrest to ensure Williams didn't have any weapons or other

items that could be harmful to officers. As explained above, the officers had probable cause for the arrest. Thus, the gun in Williams's pocket was recovered during a search incident to a lawful arrest, the gun is therefore admissible evidence, and the Court will deny the motion to suppress.

**D.     Inevitable Discovery**

The Court also finds that the inevitable discovery doctrine provides an alternate ground for denying the motion to suppress. "The inevitable discovery doctrine is an exception to the exclusionary rule." *United States v. Andrade*, 784 F.2d 1431, 1433 (9th Cir. 1986). It permits the government to rely on evidence that ultimately would have been discovered absent a constitutional violation. *Nix v. Williams*, 467 U.S. 431, 443 (1984). "If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means[,] . . . then the deterrence rationale [for the exclusionary rule] has so little basis that the evidence should be received." *United States v. Ruckes*, 586 F.3d 713, 718 (9th Cir. 2009) (quoting *Nix*, 467 U.S. at 444) (footnote omitted; alterations supplied by *Ruckes*.)

Here, the question before the Court is whether the firearm Williams was carrying in his pocket would have inevitably been discovered by the officers during a pat down search. The government has met its burden on this ground. As

explained above, it was proper for officers to conduct a pat down of Williams at the outset of this encounter. Officer Murdock testified that officers attempted to pat down Williams, but he resisted and was therefore placed under arrest for resisting and obstructing a public officer. Officer Murdock also stated that when he was searching Williams, he felt a hard object in Williams's right front pocket before he opened the pocket and saw the gun. For these reasons, the Court finds that if officers had not placed Williams under arrest for resisting, they would have conducted a pat down search of Williams. If such a pat down had been undertaken, the officers would most assuredly have discovered the firearm in Williams's pocket.

## ORDER

**IT IS ORDERED that:**

1. Defendant's Motion to Suppress (Dkt. 31) is **DENIED**.

DATED: November 30, 2020

B. Lynn Winmill
U.S. District Court Judge